## HOOVER v. PENNINGTON (LOCKHART, Intervener).
### Nos. 1300, 1437.

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

On Rehearing March 4, 1935.

Ellis & Ellis, of Amite, for Hoover.

Rownd & Warner, of Hammond, for Pennington.

### LE BLANC, Judge.

This is the second appearance of this case before this court. On the former occasion, the status of the mortgage being foreclosed on was before us for consideration, and we held that it affected and bore on the undivided half interest of Mrs. Lucy Lockhart in the property which was property that formerly belonged to the community which existed between her and her deceased husband, Mathew Lockhart. See 19 La. App. 779, 141 So. 517. The decree of the court was that the undivided one-half of the property mortgaged and which belonged to Mrs. Lucy Lockhart be sold at public sale and that the proceeds realized therefrom be applied to the payment of plaintiff's mortgage.

From this former opinion, it also appears that there were five children issue of the marriage between Mathew Lockhart and his wife, and that these five children were the owners of the other undivided half of the property in the proportion of an undivided one-fifth each of the said undivided half and which undivided half was not affected by the mortgage. In the course of time, Selby Lockhart, one of the five children, aquired the rights and titles of the others and became the sole owner of the undivided half which belonged to all of them, and the property was then owned in indivision by himself and his mother, Mrs. Lucy Lockhart, in the proportion of an undivided one-half each.

On December 6, 1932, Mrs. Lucy Lockhart and Selby Lockhart voluntarily and amicably partitioned the property between them, in kind, as appears from the authentic act of partition executed on that day before W. A. Rheams, notary public.

On January 11, 1933, Julius A. Hoover, the mortgagee, assuming to act under the decree of this court in the former judgment rendered herein, caused to be seized and sold an undivided half interest said to belong to Mrs. Lucy Lockhart, in order to satisfy his mortgage debt. Selby Lockhart thereupon intervened in the proceeding, claiming that by virtue of the partition the mortgage became transferred to the separate half of the property of Mrs. Lucy Lockhart and that it no longer bore on or affected his separate and divided half thereof. From a judgment in the lower court which sustained that contention and enjoined the sale of an undivided half of the whole property, Hoover, the mortgagee, has appealed.

In considering the proposition that is submitted, the first thought that occurs to us is one regarding the absolute right of a co-owner to demand at any time from his other coproprietors, a partition of the property he owns in common with them. Such right is provided for by article 1289, Rev. Civ. Code, which reads as follows: "No one can be compelled to hold property with another, unless the contrary has been agreed upon; any one has a right to demand the division of a thing held in common, by the action of partition."

The Code also provides (article 1294) that the partition may be voluntary, in which case, of course, it may, as was done in this case, be made by authentic act between the parties and the action of partition mentioned in the quoted article becomes unnecessary. With such a right of ownership being specifically fixed by law, does not the mortgagee who takes a mortgage on one of the co-owner's undivided interest in the property owned in common take it subject to the rights of the other coproprietors to demand their share of the property whenever they desire to do so, and are not his rights of mortgage subordinate to the rights of the other co-owners to own their portion of the property free of any encumbrance which they have not placed thereon themselves? We think that these are questions of importance in determining the issue involved and believe that they should be answered in the affirmative.

In the act of partition, the parties do not acquire any rights of property which they did not already possess. They already owned the property that is being partitioned and by the act which they execute they merely reassert their ownership, declare that they no longer desire to hold the property which they own together in common, and that, avail-ing themselves of the right which the law grants them, they have divided it so that each may go in possession of the portion or share which he already owns. When, therefore, one of the co-owners had previously mortgaged his undivided interest in the property, he had a perfect right to do so as he was mortgaging something that he owned, but he could not thereby derogate any of the rights of his co-owners, one of which was the right to demand a partition of the property either by licitation or in kind (and of these two it is well settled that the law favors the latter), and to exercise the absolute right of ownership and possession of his part thereof unhampered and unencumbered. The position of the mortgagee, on the other hand, assuming the partition to have been fair and the division of the property to have been made in equal parts, is not weakened at all as his security still rests on a half of the property, the only difference being that it is on a divided instead of an undivided half.

Aside from the foregoing considerations, however, article 1338, Rev. Civ. Code, specifically provides that: "In all judicial partitions where the property is divided in kind, the mortgages, liens and privileges existing against one of the coproprietors, shall, by the mere fact of the partition, attach to the shares allotted to him by the partition, and cease to attach to the shares allotted to his coproprietors."

This provision of the law is plain and unambiguous and seems to be controlling in the present instance, unless, as urged by counsel for plaintiff, it be restricted to judicial partitions and does not apply in cases where the partition has been made voluntarily between the parties. The case of Anglin v. Kilbourne, 131 La. 186, 59 So. 116, 117, may be said to have some bearing on that contention. In that case, two of nine coproprietors had mortgaged their undivided interests in the property owned in common. The act of mortgage contained a clause to the effect that when the property would be partitioned the mortgage would attach to the respective shares that would fall to the two mortgagors. The co-owners, who were all coheirs, afterwards made an amicable partition of the property and the same two who had granted the mortgage with the clause referred to executed another mortgage in favor of another party upon the property which had been assigned to them in the partition. The holder of the first mortgage foreclosed on the property which had been assigned to the two co-owners in the partition and the second mortgage

creditor intervened claiming a superiority of right over the first creditor as to that part of the price representing the part of the property of which the mortgagors were not owners at the time they gave the first mortgage, but of which they became owners only as a result of the partition. The claim of the second mortgage creditor was rejected, the result of the decision, as we view it, being that the mortgage granted by the two coheirs on their undivided interest in the property became transferred to the shares assigned to them by virtue of the amicable partition, and this regardless of the clause contained in the act of mortgage. "With or without said clause," says the court, "the said property consists, before partition, of whatever interest the mortgagors have in the properties described in the act of mortgage, and, after the partition, of that same interest as commuted, or segregated and fixed, by the partition." For our part, we are unable to see why there should be a distinction in regard to the mortgages bearing on undivided interests becoming attached to the segregated part after a partition in kind, whether the partition be judicial or voluntary, unless it be to guard against the possibility of fraud or collusion in a voluntary partition. In cases of fraud, however, it strikes us that the mortgagee would have his remedy in an action attacking the act of partition and having it set aside. There is no suggestion of fraud in this case, however, and the evidence, on the contrary, is that the partition was fair and equitable and that each of the parties received shares of equal value in the property.

The case of Bank of Jeanerette v. Stansbury, 110 La. 301, 302, 34 So. 452, relied on by counsel for the mortgagee herein is authority only to the effect that property, whilst held in indivision, cannot become affected by the homestead exemption, and that the debtor seeking to enforce a homestead exemption claim against a creditor seeking to enforce a mortgage must show that he occupied the property as a residence, as well when the mortgage attached as when it was sought to be enforced. We do not find that the decision has any application to the direct issue involved in this case.

We think that the judgment appealed from is correct and it is accordingly affirmed.

## On Rehearing.

In the original opinion herein handed down by us on March 6, 1934, we held that in a voluntary partition of a tract of land, as well as in the judicial partition, the mortgage existing against one of the coproprietors, by the mere fact of the partition, attached to the segregated part of the mortgagor after the partition, and that the mortgagee could not exercise his rights of mortgage by foreclosing on an undivided half of the whole property. We searched in vain for decisions on this question which was the only one involved at the time, and the only one we found, which we thought had a bearing on it, was that of Anglin v. Kilbourne, 131 La. 186, 59 So. 116, cited in the opinion.

Shortly after having handed down the opinion and decree in the case, in examining an entirely different question in another case, we chanced to read some earlier decisions of the Supreme Court, with which our opinion seemed to be in conflict. We refer particularly to the decisions in the cases of Erwin v. Orillion, 6 La. 205, and Brannin v. Womble, 32 La. Ann. 805. In the first of these cases, the lower court had decreed the mortgage which had been reserved on the undivided half of one of the parties, who was defendant in the case, to bear entirely and exclusively on the portion which had been specifically allotted to him by the partition between the joint tenants. The Supreme Court held this to be error, however, saying in part: "The mortgage was reserved on an undivided half of the whole tract, and could in this manner alone have been enforced had no change taken place on the tenure of the defendant. The change in this respect, which results from the partition above stated, cannot, in our opinion, alter the nature and effects of the contract of mortgage; it affects an undivided moiety. * * *"

In commenting on the decision, in the case of Brannin v. Womble, supra, the court said: "In Erwin v. Orillion, 6 La. [205], 214, an undivided portion of real estate having been mortgaged and the property subsequently amicably partitioned, the Court properly held: That this could not affect the right of the mortgagee, who could proceed to enforce his claim, regardless of the partition."

Although we considered the views announced in our original opinion sound, in view of these decisions, we felt compelled to grant this rehearing.

While the case was pending on the rehearing granted, the Supreme Court decided the case of Levy v. Levy et al., 180 La. 77, 156 So. 181, 182, in which it is specifically held that: "It is only in a judicial partition where the property is divided in kind that the mortgages, liens, and privileges existing against one of the coproprietors is by the mere fact of the partition transferred to the share or

proceeds allotted to him and cease to attach to the share or proceeds allotted to his co-proprietors. Civ. Code, art. 1338."

This is decisive of the very issue presented in the case before us, and, as a court of inferior jurisdiction, we are bound to follow that ruling. It necessarily follows that our original decree which affirmed the judgment of the district court, as well as that judgment, will have to be reversed and set aside and a new decree entered.

It is therefore ordered, adjudged, and decreed that the judgment appealed from and the original judgment and decree rendered by this court, affirming the same, be and they are both hereby reversed, annulled, and set aside, and it is now ordered, adjudged, and decreed that there be judgment herein in favor of Julius A. Hoover, sustaining the exception of no right or cause of action filed by him to the petition of intervention and third opposition of Selby Lockhart, third opponent, and dismissing the said intervention and third opposition of the said Selby Lockhart, at his costs.